**Frederick C. BERCKEFELDT,
Plaintiff–Appellant,**

v.

**Lloyd W. HAMMER,
Defendant–Appellee.**

No. 79CA1107.

Colorado Court of Appeals,
Div. I.

May 22, 1980.

Rehearing Denied June 26, 1980.

Certiorari Denied Sept. 22, 1980.

Elmore & Boster, P. C., Michael D. Boster, Lakewood, for plaintiff–appellant.

Porterfield, Richtsmeier & Wheatley, Wendell B. Porterfield, Jr., Denver, for defendant–appellee.

COYTE, Judge.

In this action to collect a debt arising from wagers between the parties during an informal golf match, plaintiff appeals the trial court judgment entered in favor of defendant on both claims for relief contained in the complaint. We reverse in part and affirm in part.

The events precipitating this action are essentially undisputed. Plaintiff came to Colorado from Kansas specifically to participate in the match with defendant and two others not involved in this litigation. During the match, plaintiff and defendant entered into several wagers concerning their golfing skills, and at the end of the match defendant owed $24,600 to plaintiff. To pay for this debt, defendant paid plaintiff $500 in cash and gave him a check for $24,100. After this check was not honored by defendant's bank because his account had been closed, plaintiff filed this action based upon two grounds of relief: (1) defendant owed him $24,100 on account of the wager; and (2) defendant had defrauded him by tendering a worthless check upon which plaintiff had relied.

After trial to the court, the court entered findings reflecting the occurrence of the above events, but, nevertheless it entered judgment in favor of defendant, concluding that the wager was not incidental to a bona fide social relationship and as such that it was an unenforceable illegal debt pursuant to § 18–10–101, et seq., C.R.S.1973. It further found that the check was intended only as evidence of the debt. At the time of delivery of the check to plaintiff, he was advised that there were no funds in the account and that plaintiff would be paid from other sources. Further, if the parties intended the check to be a negotiable instrument it was given in payment of an illegal debt, and thus, no relief could be granted pursuant to § 13–21–109, C.R.S. 1973.

In enacting the Colorado Gambling Code, § 18–10–101, et seq., C.R.S.1973, the General Assembly expressly stated in § 18–10–101(1):

It is declared to be the policy of the general assembly, recognizing the close relationship between professional gambling and other organized crime, to restrain all persons from seeking profit from gambling activities in this state; to restrain all persons from patronizing such activities when conducted for the profit of any person; to safeguard the public against the evils induced by common gamblers and common gambling houses; and at the same time to preserve the freedom of the press and to avoid restricting participation by individuals in

sport and social pastimes which are not for profit; do not affect the public, and do not breach the peace.

To effectuate this policy the General Assembly in § 18–10–102(2), C.R.S.1973, has provided the following relevant definition:

"Gambling" means risking any money, credit, deposit, or other thing of value for gain contingent in whole or in part upon lot, chance, the operation of a gambling device, or the happening or outcome of an event, *including* a sporting event, over which the person taking a *risk has no control, but does not include:*

(a) Bona fide contests of skill, speed, strength, or endurance in which awards are made only to entrants or the owners of entries; *or*

.    .    .    .    .

(d) Any game, wager, or transaction which is incidental to a bona fide social relationship, is participated in by natural persons only, and in which no person is participating, directly or indirectly, in professional gambling. (emphasis added)

 Here, this golf match was a sporting event, participated in and bet on by the four golfers, in which each of the four, by his playing, had control over the outcome. Therefore, the wagering on this golf match did not constitute gambling as defined in § 18–10–102(2), C.R.S.1973.

We need not reach the issue as to whether the trial court erred in concluding that the wagering at issue here was not incidental to a bona fide social relationship. *See* § 18–10–102(2)(d), C.R.S.1973.

Having made specific findings concerning the parties' wager and the amount that defendant owed plaintiff, pursuant to that wager, the trial court erred in not entering judgment in favor of the plaintiff in the amount of $24,100.

As to plaintiff's second claim for relief, the record supports the trial court's conclusion that plaintiff was aware that defendant tendered the $24,100 check only as evidence of the debt and not as a draft upon his bank account. Thus, the court did not err in denying plaintiff relief under § 13–21–109, C.R.S.1973.

· The judgment is affirmed as to the trial court's disposition of plaintiff's second claim for relief and is reversed as to the trial court's disposition of plaintiff's first claim for relief, and the cause is remanded to the district court with directions to enter judgment in favor of plaintiff in the amount of $24,100.

VAN CISE and KIRSHBAUM, JJ., concur.